**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BRANDON MCCUTCHEON,

               Plaintiff,

v.                               CIVIL ACTION NO.  2:24-cv-00620

DESIGN 1 GROUP, LLC, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Solar Mosaic LLC's Motion to Compel Arbitration* (Document 9), the *Memorandum of Law in Support of Defendant Solar Mosaic LLC's Motion to Compel Arbitration* (Document 10), the *Plaintiff's Response in Opposition to Defendant Solar Mosaic LLC's Motion to Compel Arbitration* (Document 15), the *Reply Memorandum of Law in Support of Defendants Solar Mosaic LLC and Connexus Credit Union's Motion to Compel Arbitration* (Document 16), the Defendants' *Notice of Supplemental Authority* (Document 21), the Defendants' second *Notice of Supplemental Authority* (Document 26), the Defendants' *Third Notice of Supplemental Authority* (Document 35), the Defendants' *Fourth Notice of Supplemental Authority* (Document 36), *Connexus Credit Union and Solar Mosaic LLC's Position Regarding the Motion to Compel Arbitration* (Document 43), and the *Plaintiff's Position Regarding the Motion to Compel Arbitration* (Document 45), as well as all accompanying exhibits.  For the reasons stated herein, the Court finds that the Defendants' motion to compel arbitration should be granted.

**FACTUAL ALLEGATIONS**

The Plaintiff, Brandon McCutcheon, initiated this action with a complaint filed in the Circuit Court of Kanawha County, West Virginia, on October 17, 2024.   The Plaintiff named as defendants Design 1 Group, LLC, Connexus Credit Union, Solar Mosaic, LLC, and three members of Defendant Design 1, including Jennings Cole, Chris Cole, and Jon Cole.[1]   The Defendants removed the action to this Court on October 29, 2024.

Defendant Design 1 is a marketing and design company that markets and sells solar panels in several states.   Defendant Mosaic is a primary lending partner of Design 1, and Defendant Connexus is a credit union that has partnered with Mosaic to provide loans to borrowers who purchase solar panels.   The Plaintiff's claims derive from the installation of solar panels by Design 1 after the Plaintiff entered into a contract with Design 1 for such on September 9, 2021, and a loan agreement ("Loan Agreement") facilitated by Design 1 to finance the solar panels that named Mosaic and Connexus as lenders.

The contract entered between the Plaintiff and Design 1 originally called for the installation of a system consisting of 33 solar panels, but after informing the Plaintiff that the system would not meet the requirements under West Virginia law, Design 1 executed a change order for a system consisting of 26 solar panels.   Design 1 assured the Plaintiff that the smaller system would be appropriate and sufficient for his residence.   However, the Plaintiff alleges that Design 1 ultimately installed a different solar panel system without his approval, and the system installed by Design 1 worked differently than the one called for in the contract.   The Plaintiff also alleges that due to the work performed by Design 1, his residence was damaged, he was without power on

---

[1] Defendant Jon Cole was dismissed from this action after the Plaintiff filed a notice of dismissal on December 31, 2025, notifying this Court and the parties of his dismissal without prejudice.

several occasions due to a fuse blowing after Design 1 activated the system prior to its inspection and the installation of a two-way meter. He was required to hire an electrician to repair faulty corrective work done to his fuse box by Design 1 and to have the power company install a two-way meter after Design 1 failed to arrange for its installation. Due to a delay in the system's installation, as well as its inspection and the installation of the two-way meter, the Plaintiff was unable to test the system's functionality until such was completed.

Prior to entering into the contract, a Design 1 salesperson made the following representations to the Plaintiff to induce him to enter into the contract: (1) "Design 1 would design and have installed a solar panel system suitable for McCutcheon's residence and its energy needs," (2) "McCutcheon's electrical and/or power bill would be substantially decreased," and (3) "McCutcheon would receive a tax rebate." (Pl.'s Compl. at ¶ 18.) However, the Plaintiff alleges that the system has provided no benefit and has never functioned correctly, and that he "has received no measurable reduction on his electric or power bill." (*Id.* at ¶¶ 43-45.) After he contacted Design 1 on numerous occasions, Design 1 "failed to make the system operational," represented "that it was properly functioning," and stopped responding to his "requests to rectify the deficiencies with its solar panel system." (*Id.* at ¶¶ 46-48.)

The Plaintiff asserts claims of fraud and misrepresentation, negligence, breach of contract, and a violation of the West Virginia Consumer Credit and Protection Act against Defendant Design 1. In addition, the Plaintiff asserts a claim of a violation of § 46A-2-103 of the West Virginia Consumer Credit and Protection Act against Defendants Mosaic and Connexus. The Plaintiff also asserts a claim seeking to pierce the corporate veil of Design 1 in order to hold its members/owners,

including the Cole Defendants, "responsible and liable for McCutcheon's damages stemming from Design 1's acts and omissions."  (Pl. Compl. at ¶ 96.)

Defendant Mosaic moved to compel arbitration and was later joined by Defendant Connexus.  Defendants Mosaic and Connexus cite the arbitration provision of the Loan Agreement, which provides:

### 16. ARBITRATION AGREEMENT

**PLEASE READ THE FOLLOWING ARBITRATION TERMS CAREFULLY AS THEY WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.** If either you or we elect to arbitrate a Claim rather than have a court (a judge or a jury) decide the Claim, it will be resolved by individual (not class or class-wide) binding arbitration in accordance with the terms specified in this Arbitration Agreement.

(Document 9-1 at 22.)  The arbitration provision also provides the following definition of the term "Claim":

A "Claim" is any claim, dispute or controversy between you and us, whether preexisting, present or future, which arises out of or relates to the Loan Agreement, any prior agreement you have had with us, the events leading up to your loan (for example, any disclosures, advertisements, promotions or oral or written statements made by us), any product or service provided by us or third parties in connection with your loan, any transaction conducted with us, the collection of amounts you owe us and the manner of collection or the relationship between you and us.

The term "Claim" has the broadest possible meaning. It includes initial claims, counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.

(*Id.*)

On June 9, 2025, Defendants Mosaic and Connexus filed a notice of an automatic stay due to Defendant Mosaic filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   This Court issued an order staying this action, pending resolution of the bankruptcy proceeding.   On December 17, 2025, this Court lifted the stay after being notified by Defendant Mosaic that the automatic stay as a result of its bankruptcy case was no longer in effect and directed the parties to update the Court on their respective positions as it pertains to the Defendants' motion to compel arbitration.   Both parties responded and agreed that the motion to compel arbitration is ripe for disposition.

## APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.   Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles.   *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."   *Id.* (internal citation omitted).   Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (internal quotation marks omitted).   Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state.   *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998).

A district court must "engage in a limited review to ensure that the dispute is arbitrable— i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."   *Glass v. Kidder Peabody & Co*., 114 F.3d 446, 453 (4th Cir. 1997) (citations and quotation marks omitted).   To challenge the validity of an arbitration clause within a contract a party must specifically challenge the arbitration clause, rather than the contract as a whole.   *See Buckeye Check Cashing, Inc v. Cardegna,* 546 U.S. 440, 445 (2006).   The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).   Thus, "dispute[s] about the scope of an arbitration agreement" will be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Mey v. DIRECTV*, LLC, 971 F.3d 284, 292 (4th Cir. 2020) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996)).

## DISCUSSION

Defendants Mosaic and Connexus ("Finance Defendants") argue that it is undisputed that they and the Plaintiff entered into the Loan Agreement, which provides for arbitration.   The Finance Defendants further argue that the arbitration clause is not unconscionable and that the

6

Loan Agreement is supported by adequate consideration.   Additionally, the Finance Defendants argue that the Plaintiff's claim against them falls within the scope of the arbitration clause primarily in two ways.   First, they contend that the Plaintiff's claim "arises out of or relates to the Loan Agreement" because it depends on the existence of the Loan Agreement since the basis of his claim is the financing he received from them pursuant to the Loan Agreement.   (Defs.' Reply at 2, 4, quoting Document 9-1 at 22.)   Second, the Finance Defendants contend that even if the Plaintiff's claim does not arise out of the Loan Agreement, it is still one that "arises out of or relates to 'any product or service provided by us or third parties in connection with your loan.'" (Defs.' Reply at 6, quoting Document 9-1 at 22) (emphasis omitted.)   Specifically, the Finance Defendants argue that the Plaintiff's claim relates to his purchase of a solar panel system provided by a third party, Defendant Design 1, which was financed through the loan provided by them.

The Plaintiff concedes that he entered into the Loan Agreement containing the arbitration clause but argues that his claim against the Finance Defendants does not fall within the scope of the arbitration clause.   Specifically, he argues that his claim against the Finance Defendants does not constitute a "Claim" as defined by the arbitration clause because that claim is not based on "a breach of the Loan Agreement; the formation of the Loan Agreement; services provided pursuant to the Loan Agreement; any transaction with the Finance Defendants; or any effect by the Finance Defendants to collect amounts owed under the Loan Agreement."   (Pl.'s Resp. at 8.)   Rather, he argues that his claim against the Finance Defendants "is exclusively based upon Design 1's conduct."   (*Id.*)   The Plaintiff also contends that although the arbitration clause allows for claims arising out of a product or service provided by a third party, its scope is not as broad because "it is designed to capture loan service companies or debt collection companies whose actions directly

7

relate to the Loan Agreement."  (*Id.* at 7.)  The Plaintiff further contends that any ambiguities should be resolved in his favor and that he should not be subject to arbitration because he could not have assented to arbitrating claims based on Design 1's conduct since he could not anticipate that such claims would be arbitrable when he entered into the Loan Agreement.

Because the Plaintiff agrees that he entered into the Loan Agreement, the primary issue before the Court is whether the Plaintiff's claim against the Finance Defendants falls within the scope of the Loan Agreement's arbitration clause.  The arbitration clause covers "any claim, dispute or controversy between [the Plaintiff] and [the Finance Defendants], which arises out of or relates to. . . any product or service provided by. . . third parties in connection with [the Plaintiff's] loan."  (Document 9-1 at 22.)

The above referenced language of the arbitration clause clearly contemplates the Plaintiff's claim against the Finance Defendants.  The Plaintiff asserts a claim against the Finance Defendants under § 46A-2-103 of the West Virginia Consumer Credit and Protection Act (WVCCPA), in which he claims that the Finance Defendants are subject to his claims against Defendant Design 1 for their participation as lenders in financing the purchase of a solar panel system provided by Design 1 via a consumer loan to the Plaintiff.  Because the Plaintiff's claim arises out of or relates to the purchase of a product—the solar panel system—provided by a third party—Design 1—and such purchase is connected to the Plaintiff's loan, it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the Plaintiff's claim.[2]  *Mey*, 971 F.3d at 292 (quoting *Am. Recovery Corp.*, 96 F.3d at 92).

---

[2] It also cannot be said that the Plaintiff's claim is not the type of claim that can be arbitrated under the arbitration clause because it is an initial claim "based upon. . . consumer rights. . . [and] statute" and does not fall under any of the listed exclusions.  (Document 9-1 at 22.)

8

The Plaintiff argues that the language of the arbitration clause pertaining to products or services provided by third parties is limited to products or services provided by "loan service companies or debt collection companies."   (Pl.'s Resp. at 7.)   However, nothing in the arbitration clause supports such a limitation.   To the contrary, the language of the arbitration clause clearly contemplates a claim relating to "*any* product or service provided by. . . third parties in connection with [the Plaintiff's] loan."   (Document 9-1 at 22.)   Moreover, the phrase "in connection with [the Plaintiff's] loan" does not limit the term "third parties" because it merely requires the products or services provided by third parties to be connected to the loan in some way, such as here, where the product purchased by the Plaintiff was financed with the loan he received from the Finance Defendants.   Clearly, the arbitration clause is not limited to products or services provided by loan service or debt collection companies.

The Plaintiff further argues that he should not be compelled to arbitrate his claim against the Finance Defendants because he "could not have anticipated, and hence assented to, arbitrating claims based upon Design 1's actions as a consequence of entering into the Loan Agreement." (Pl.'s Resp. at 10.)   While it is the case that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *Mey*, 971 F.3d at 292 (quoting *Am. Recovery Corp.*, 96 F.3d at 92), the Plaintiff agrees that he entered into the Loan Agreement, which contains the arbitration clause at issue, and as previously discussed, the Plaintiff's claim against the Finance Defendants clearly falls within the scope of the arbitration clause.   The fact that the Plaintiff's claims against the Finance Defendants are connected to the conduct of Design 1 does not alter the applicability of the clause. *See Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 302 (W. Va. 2018) (finding that "the unambiguous language in the Agreement signed by the parties clearly

9

demonstrates that it. . . comprises their mutual assent to submit" to arbitration); *see also Mey*, 971 F.3d at 288 (finding that the plaintiff's signing of an acknowledgement of the arbitration agreement demonstrated her assent to that agreement).

To the extent the Plaintiff is arguing he lacked notice that such a claim was covered, the Plaintiff had a duty to inform himself of the arbitration clause and the claims it covers before executing the Loan Agreement.   *See Sedlock v.* Moyle, 668 S.E.2d 176, 180 (W. Va. 2008) ("[I]n the absence of extraordinary circumstances, the failure to read a contract before signing it does not excuse a person from being bound by its terms. . . [and] [a] person who fails to read a document to which he places his signature does so at his peril." (quoting *Reddy v. Cmty. Health Found. Of Man*, 298 S.E.2d 906, 910 (1982))); *see also Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) (same).

Because the Plaintiff's claim against Defendants Mosaic and Connexus falls within the scope of the arbitration clause contained in the Loan Agreement, the Court finds the Finance Defendants' motion to compel arbitration should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Solar Mosaic LLC's Motion to Compel Arbitration* (Document 9) be **GRANTED**. The Court further **ORDERS** that the Plaintiff's claim against Defendants Mosaic and Connexus be **REFERRED** to arbitration in accordance with the terms of the Loan Agreement and the Federal Arbitration Act.   Finally, the Court **ORDERS** that this action be **STAYED** pending resolution of arbitration and **REMOVED** from the Court's active docket.[3]

---

[3] Although the Court does not determine whether the Plaintiff's claims against Defendant Design 1 are subject to the

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        January 14, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

arbitration clause, the Court finds that staying the case pending resolution of arbitration of the Plaintiff's claim against the Finance Defendants is warranted to promote judicial economy given that there is overlap between the Plaintiff's claims. *See Clark v. Appalachian Power Co.*, No. 2:24-cv-424, 2025 WL 607200, at *7 (S.D. W. Va. Feb. 25, 2025) ("A stay avoids the risk of inconsistent rulings on the same legal issues as well as the simultaneous prosecution and defense of identical issues in two separate forums.").